## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Raymond P. Moore

Civil Action No. 12-cv-03373-RM-MEH

GAYLA BARDEN,

      Plaintiff,

v.

KING SOOPERS, a Colorado Corporation

      Defendant.

---

### ORDER

---

Plaintiff Gayla Barden seeks to recover damages from her employer, Dillon Companies, Inc. d/b/a King Soopers ("King Soopers")[1], claiming that she was improperly demoted and her pay reduced following an on-the-job injury.   Plaintiff seeks to recover under the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq*. (the "ADA"), analogous state statutory provisions (the Colorado Unfair Employment Practices Act, C.R.S. §§ 24-34-401 *et seq.*) and state claims for breach of an implied contract and promissory estoppel.   Before the Court is King Soopers' Motion for Summary Judgment.   (ECF No. 69.)[2]   For the reasons described below, the Court GRANTS the motion, in part, and DENIES in part.

---

[1] Defense counsel for King Soopers points out in their reply brief to their motion for summary judgment (ECF No. 80 at 1) that their client has been "incorrectly identified" and should instead be named "King Scoopers."   The Court chooses to take judicial notice of the fact that Plaintiff is correct in naming the Defendant in this case as King Soopers, *not* King Scoopers, as King Soopers' own attorneys would have us believe.

[2] The Court notes that both parties have filed briefs in this matter that fail to conform to the Court's Practice Standards, and specifically have failed to format their statements of undisputed material facts in the manner prescribed in Rule IV.B.2. Any future motion filed with the Court that does not conform to this Court's Practice Standards risks being dismissed on those grounds alone.

## I.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569-70 (10th Cir. 1994).   Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).   "Under Rule 56(c), the moving party[] *always* bears the initial responsibility of informing the district court of the basis for its motion . . . ."   *Reed v. Bennet*, 312 F.3d 1190, 1994 (10th Cir. 2002) (quoting *Celotex Corp.*, 477 U.S. at 322).   However, the moving party "can satisfy that burden with respect to an issue on which it does not bear the burden of persuasion at trial simply by indicating to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *1-800-Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial.   *See id.*   A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.   *Anderson*, 477 U.S. at 248.   In

considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party.   *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in her complaint, but must respond with specific facts showing a genuine factual issue for trial.   Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (citation and emphasis omitted).

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts as recited below are based on adequate citations to the record which would be admissible at trial.   The facts are recited in a light most favorable to the non-moving party.

Plaintiff began working at King Soopers' Store 63 in October 13, 1985.   (ECF No. 1, Compl. at ¶ 10; ECF No. 69-1, Barden Dep. at 29:22 – 30:3.)   She began her tenure with the company as a part-time Courtesy Clerk and eventually worked her way up to a full-time position at the store's service desk.   (*Id.* at 34:14 – 22.)   After 16 years at Store 63, in 2001 Plaintiff transferred to King Soopers' Store 75 in Parker, Colorado and became a part-time All Purpose Clerk ("APC").   (ECF No. 69-2, Location to Location Transfer Form; ECF No. 69-1, Barden Dep. at 33:10 – 35:2, 52:5 – 9.)   Plaintiff eventually worked her way back up to full-time status, although she frequently was staffed at full-time hours prior to being officially designated as full-time.   (ECF No. 69-1, Barden Dep. at 36:19 – 25.)   Throughout her employment with King

Soopers, Plaintiff was frequently acknowledged for her excellent customer service.   (*See* ECF

No. 75-3 at 1 – 17, Letters of Customer Compliments and Secret Shopper's Reviews.)

On April 4, 2009, Plaintiff slipped and fell while throwing sand on the iced-over steps at

the back of the store.   (ECF No. 69-1, Barden Dep. at 62:4 – 64:10.)   Plaintiff was taken to an

urgent care center in Parker, Colorado where it was determined that she had suffered a fractured

left elbow with additional injuries to her left shoulder and cervical spine.   (*Id.* at 73:4 – 22; ECF

No. 75-3 at 20, ALJ Findings of Fact, Conclusions of Law and Order.)   Plaintiff's arm was placed

in a cast and her primary doctor, Dr. John Harris, allowed Plaintiff to return to work with the

restriction that she could not use her left arm.   (ECF No. 69-1, Barden Dep. at 78:15 – 80:18; ECF

No. 69-6, Apr. 4, 2009 Physician's Report of Worker's Compensation Injury.)   She returned to

work the following week with her arm in a sling.   (ECF No. 69-1, Barden Dep. at 91:1 – 10.)   In

June, 2009, Dr. Harris referred Plaintiff to Dr. Gretchen Brunworth for physical therapy.   (ECF

No. 69-8, June 24, 2009 Initial Medical Consultation at 1.)   Dr. Brunworth noted that Plaintiff

was on a restriction of a maximum lift of five pounds but that she was doing "quite a bit with her

right arm."   (*Id.* at 2.)   Dr. Brunworth noted that "gentlemen in the store" helped her with

"heavier lifting."   (*Id.*)

Plaintiff continued to see Dr. Brunworth for physical therapy and other treatments and her

condition improved.   On March 29, 2010, Dr. Brunworth determined that Plaintiff had reached

her Maximum Medical Improvement ("MMI"), that Plaintiff could lift a maximum of thirty

pounds but was limited to lifting five pounds overhead.   (ECF No. 69-9, Mar. 29, 2010

Impairment Rating.)

4

Plaintiff eventually requested to change doctors and underwent an independent medical evaluation by Dr. Albert Hattem on September 29, 2010 in connection with that request.   (ECF No. 69-10, Sept. 29, 2010 Division Independent Medical Evaluation.)   In his written evaluation, Dr. Hattem noted his agreement with the MMI established by Dr. Brunworth.   (*Id.* at 13.) Plaintiff's request to see a new medical provider was ultimately granted and she began seeing Dr. Kristin Mason in February, 2011.   (*See* ECF No. 69-11, Feb. 8, 2011 New Patient Evaluation.) In Dr. Mason's initial evaluation on February 8, 2011, she noted her initial agreement with Plaintiff's MMI of thirty pounds max lift, five pounds overhead.   (*Id.* at 4.)

On August 15, 2011, Plaintiff was required to meet with King Soopers' Manager of Labor and Employee Relations, Stephanie Bouknight.   (ECF No. 69-1, Barden Dep. at 143.)   The exact content of this conversation is disputed, but it appears that Plaintiff and Ms. Bouknight discussed Plaintiff's physical limitations to at least some extent and, during the course of that conversation, completed an Assessment Interview Worksheet that memorialized Plaintiff's self-reported physical abilities and work functions.   (ECF No. 69-13, Aug. 15, 2011 Assessment Interviewer Worksheet.)   That document confirms Plaintiff's lifting restrictions as they had been established by her treating physician at that time – thirty pound lifting capacity and five pound overhead lifting capacity.   (*Id.* at 3.)   Of particular note, the Worksheet asked whether there were "any accommodations that you are aware of that will allow you to continue in your present job?"   (*Id.* at 4.)   Plaintiff responded yes to this question and further wrote that "[i]f something is over 30lbs [I] would ask for help."   (*Id.*)   In Plaintiff's written response to the preceding question, Plaintiff also described that "overhead, would use a ladder" and that "not much above head is over 5lbs."

5

(*Id.*)   Plaintiff also indicated that she would use a "mule" device when unloading trucks.   (*Id.*)

On February 14, 2012, Dr. Mason revised Plaintiff's limitations, increasing her permanent lifting restrictions to forty pounds lifting max, five pounds overhead.   (ECF No. 69-12, Physician's Report of Worker's Compensation Injury; ECF No. 69-1, Barden Dep. at 134:19 – 24, 138:16 – 139:8.)

On February 22, 2012, King Soopers' store manager, Michelle Nealy, met with Plaintiff to inform her that she would be demoted from her position as a full-time APC and was being reassigned to work the "service desk, part time . . . because of her permanent restrictions of 40lbs lifting and not over 5lbs overhead."   (ECF No. 75-3 at 43, Feb. 22, 2012 Email; ECF No. 69-1, Barden Dep. at 178:6 – 180:7.)   Eddie Scott, another manager at the store, was also present during that meeting.   (*Id.*)   It appears that Plaintiff was actually kept on as full-time in her new position at the service desk.   (ECF No. 69-1, Barden Dep. at 185:10 – 17.)   Plaintiff has been working at the service desk since February, 2012 at an hourly pay of around $12.   (ECF No. 69-1, Barden Dep. at 185:18 – 186:9.)   Prior to her demotion from APC, she was earning an hourly pay of $17.61.   (*Id.*)

On February 24, 2012, Plaintiff submitted a letter to King Soopers' President, VP of Operations, VP of Merchandising, Human Resources, District Manager and Store Manager regarding her demotion.   (ECF No. 69-17, Feb. 24, 2012 Letter.)   Plaintiff's letter described the series of events from the time of her injury in 2009 up to her eventual demotion in 2012 and asserted that she was ready to enforce her rights through legal action.   (*Id.*)

On March 13, 2012, Plaintiff met with Dr. Mason and her restrictions were again revised.

6

(ECF No. 75-4 at 7 – 10, Mar. 13, 2012 Followup Examination.)   After reviewing a job

description of the APC role, Dr. Mason cleared Plaintiff for a "trial of full duty" with no lifting or

other restrictions.   (*Id.* at 7, 9.)   Plaintiff provided this information to her manager, Ms. Nealy

shortly thereafter.   (ECF No. 75-4 at 12, Mar. 22, 2012 Email.)   Plaintiff was then informed that

she would be required to re-apply for the APC position she had previously occupied.   (*Id.*)

While APC positions were eventually made available, and indeed Plaintiff was informed by her

manager at one point that an APC position had opened up, all of these openings were for part-time

positions and there were no offerings for a full-time APC position.   (ECF No. 75-4 at 14, May 1,

2012 Email, ECF No. 75-4 at 16, May 3, 2012 Email; ECF No. 69-1, Barden Dep. at 190:12 –

197:3.)   Part-time employees are generally designated as working twenty hours per week,

although it is possible for these employees to be given additional hours.   (ECF No. 69-1, Barden

Dep. at 190:12 – 197:3; ECF No. 75-4 at 23, Scott Dep.)   Prior to her demotion, Plaintiff was

regularly scheduled to work forty hours per week as a full-time APC.   (ECF No. 69-13, Aug. 15,

2011 Assessment Interviewer Worksheet at 1.)

       At all relevant times, Plaintiff was subject to King Soopers' Policies and Special

Procedures ("Policy Manual") and Plaintiff has acknowledged her receipt and understanding of

those documents.   (ECF No. 69-4, Policies and Special Procedures; ECF No. 69-5, Policies and

Special Procedures Receipt Acknowledgment; ECF No. 69-1, Barden Dep. at 270:18 – 271:23.)

The Policy Manual contains the following disclaimer: "[t]he information contained in this Manual

is for general information only.   The language used is not intended to create or constitute an

employment agreement with any associate."   (ECF No. 69-4, Policies and Special Procedures at

ii.)

## III.   ANALYSIS

### A.   Plaintiff's ADA Claim

"'Congress enacted the [ADA] in 1990 to remedy widespread discrimination against' persons with disabilities." *Smothers v. Solvay Chem., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001)).   The Tenth Circuit reviews ADA claims under the analytical framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).   *See Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).   Ruling on a motion for summary judgment "[u]nder this framework, the plaintiff has the burden of articulating a prima facie case of discrimination."   *Hardy*, 185 F.3d at 1079.   To establish a prima facie case of discrimination under the ADA, Plaintiff must sufficiently show that (1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (3) she was terminated under circumstances which give rise to an inference that the termination was based on her disability. *Morgan*, 108 F.3d at 1323 (citations omitted).   Thus, "[i]f [Plaintiff] cannot show that there is a genuine issue of triable fact as to any of the elements of the prima facie case, then the Defendants are entitled to summary judgment."   *Koessel v. Sublette Cnty. Sheriffs Dept.*, 717 F.3d 736, 742 (10th Cir. 2013).

Should Plaintiff establish a material issue of fact as to all three elements, thus establishing a prima facie case, "[t]he burden of production then shifts to the employer to articulate a legitimate

nondiscriminatory reason for taking the adverse action against the plaintiff." *Hardy*, 185 F.3d at

1079 (citations omitted); *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1259 (10th Cir. 2001).

Should the employer carry its burden of showing a nondiscriminatory reason, "[t]he burden then

shifts back to the plaintiff to present evidence such that a reasonable jury could conclude that the

proffered nondiscriminatory reason for the employment action is pretextual, that is, unworthy of

belief." *Hardy*, 185 F.3d at 1079-80 (citations and quotations omitted).

   1. <u>A material issue of fact exists as to whether Plaintiff was disabled.</u>

  King Soopers argues that Plaintiff was not disabled as that term is defined by the ADA.

*See* 42 U.S.C. § 12102.   King Soopers claims that Plaintiff admits that she is not disabled,

pointing to testimony made by Plaintiff at her deposition indicating the same.   (ECF No. 69-1,

Barden Dep. at 213:17 – 19, 316:19 – 21.)   King Soopers further argues that it could not have

perceived Plaintiff as disabled because there is no evidence that King Soopers believed that

Plaintiff had an impairment that limited one or more of her major life activities.   Plaintiff, in turn,

argues that Plaintiff's disabled status was established by the various medical records relating to her

injury, which were in King Soopers' possession, listing her permanent medical impairments and

permanent restrictions.

  As to the first factor of the prima facie ADA claim—whether a plaintiff is disabled—the

Tenth Circuit has acknowledged that "[d]isability is a term of art under the ADA."   *Doyal v. Okla.*

*Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000).   Under the ADA, a disability is defined as "(A) a

physical or mental impairment that substantially limits one or more of the major life activities of

such individual; (B) a record of such an impairment; or (C) being regarded as having such an

impairment." *Id.* (citing 42 U.S.C. § 12102).

The testimony King Soopers cites to from Plaintiff's deposition is inapposite.   At the time those statements were uttered by Plaintiff, she had been released from any and all restrictions by Dr. Mason and so her statement that she was not disabled was factually accurate.   (ECF No. 75-4, Mar. 13, 2012 Followup Examination.)   Plaintiff's assessment of her disability, or lack thereof, says nothing of the impairments she had at the time King Soopers chose to demote her to the service desk.   Instead, at the time Plaintiff was demoted, King Soopers was in possession of Dr. Mason's most current impairment assessment, limiting Plaintiff to a maximum lifting capacity of forty pounds and overhead lift of five pounds.   (ECF No. 75-3 at 43, Feb. 22, 2012 Email.)

The inquiry thus turns to whether Plaintiff would qualify as disabled as that term is defined under the ADA, beginning with the analysis of whether Plaintiff's documented restrictions would constitute "a physical or mental impairment that substantially limits one or more of the major life activities."   42 U.S.C. § 12102(1)(A).   This inquiry has been broken down into three distinct questions.   *Doyal*, 213 F.3d at 495 (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)).   The Court first determines whether the plaintiff has an impairment.   *Id.*   Second, the Court identifies whether the restricted activity would constitute a "major life activity" under the ADA.   *Id.* Third, the Court determines whether the impairment causes the plaintiff's ability to perform this life activity to be "substantially limited."   *Id.*

First, objective medical evidence establishes that Plaintiff suffered from an impairment in the form of lifting limitations at the time that King Soopers demoted her to the service desk.   As to the second factor, while the ADA does not define the term "major life activity," that term has been

10

construed by the Tenth Circuit as a "basic activity that the average person in the general population can perform with little or no difficulty." *Doyal*, 213 F.3ds at 495 (quoting *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir. 1999).   "Major life activities include such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working."   *Id.* at 495-96 (citing *Poindexter v. Atchinson, Topeka & Santa Fe Ry. Co.*, 168 F.3d 1228, 1231-32 (10th Cir. 1999).   Because the Tenth Circuit specifically identifies "lifting" as a "major life activit[y]," Plaintiff's lifting limitation would clearly fall under this category.   *Id.*

Turning to the third factor, an impairment is only "substantially limiting" where it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."   29 C.F.R. § 1630.2(j)(1)(ii).   However, this measure is meant to be "construed broadly" and "to the maximum extent permitted by the terms of the ADA." *Id.*   Here, the Court finds that there is a material issue of fact as to whether Plaintiff's lifting limitation of forty pounds maximum, five pounds overhead at the time she was demoted was a "substantially limiting" impairment.   *Id.*

Having determined that Plaintiff had a physical impairment that substantially limited a major life activity, the Court thus finds that Plaintiff has sustained her burden of establishing a material issue of fact as to whether she was disabled under the ADA at the time that King Soopers demoted her.   42 U.S.C. § 12102.   Because we make this determination, the Court need not analyze whether Plaintiff would have a "record of" such disability or whether she would be "perceived as" having such a disability.   *Id.*

11

2.      A material issue of fact exists as to whether Plaintiff could perform the
essential functions of the APC position with reasonable accommodations.

King Soopers argues that Plaintiff is unable to sustain her burden of proof as to the second

factor of her ADA claim because she could not perform the essential job functions of an APC in

February 2012 when she was demoted.   King Soopers also argues that Plaintiff failed to ask for an

accommodation when she met with Ms. Bouknight in August, 2011 to discuss her disability.

For the second factor of a prima facie ADA claim, the Tenth Circuit has endorsed a

two-part analysis to determine whether a person is qualified to perform the essential functions of

her job.  *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1190 (10th Cir. 2003) (citing *Aldrich v.

Boeing Co.*, 146 F.3d 1265, 1271 (10th Cir. 1998)).   "First, the court determines whether the

individual can perform the essential functions of the job.   Second, if (but only if) the court

concludes that the individual is unable to perform the essential functions of the job, the court

determines whether any reasonable accommodation by the employer would enable him to perform

those functions."  *Id*.   Under the ADA, if a disabled employee can perform the essential

functions of her job with a reasonable accommodation, an employer must provide the employee

with such an accommodation.   *Id*.   In order to determine what reasonable accommodation is

appropriate, "[t]he federal regulations implementing the ADA 'envision an interactive process that

requires participation by both parties.'"   *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619

(10th Cir. 1998) (quoting *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir.

1996)).   As with the other elements of Plaintiff's ADA claim, the Tenth Circuit "place[s] the

burden on the plaintiff to show his qualification for a job . . . which is a mixed question of law and

fact." *Koessel*, 717 F.3d at 743.

Here, even assuming that Plaintiff could not perform the essential functions of her job as an APC in February, 2012, the Court must still determine whether "any reasonable accommodation by [King Soopers] would enable [Plaintiff] to perform those functions." *Davidson*, 337 F.3d at 1190. Here, the record indicates that Plaintiff was able to work as an APC with certain accommodations. Specifically, although Plaintiff was noted as being able to do "quite a bit with her right arm," Plaintiff would ask fellow employees with help when breaking down very large bins of merchandise into smaller loads that she could handle on her own. (ECF No. 69-8, June 24, 2009 Initial Medical Consultation; ECF No. 69-13, Assessment Interviewer Worksheet at 4; ECF No. 69-1, Barden Dep. at 89:6 – 90:1.) For heavier items that needed to be stocked on top shelves, Plaintiff was able to work around her overhead lifting limitation by using a ladder. (ECF No. 69-13, Assessment Interviewer Worksheet at 4.) For unloading trucks, Plaintiff used a "mule." (*Id.*) With these accommodations, Plaintiff was able to work as an APC from the next week following her accident on April 4, 2009 up until she was demoted to the service desk in February, 2012.

The very fact that Plaintiff was able to work for almost three years in the capacity of an APC, without ever having received any negative performance reviews or other negative feedback of any sort from her supervisors, co-workers or King Soopers' customers is sufficient to create a material issue of fact as to whether Plaintiff could perform the essential functions of the APC position. Further, one of Plaintiff's colleagues, Eddie Scott, is documented as having affirmed that Plaintiff was able to perform all of the tasks required of her. (ECF No. 75-3 at 43, Feb. 22,

2012 Email.)

King Soopers points to the fact that Plaintiff's medically documented restrictions at the time she was demoted – forty pounds max lift, five pounds overhead – does not line up with the documented lifting requirements of the APC position as proof that she could not perform those essential functions.  (ECF No. 69-14, King Soopers Job Description, at 3.)   This document shows that an APC is required to lift forty-one to fifty pounds from forty-one to sixty percent of an employee's shift and over fifty-one pounds for up to twenty percent of an employee's shift, and also imposes similar carrying requirements.  (*Id.*)   Although these lifting requirements would exceed the limits of Plaintiff's lifting restrictions set by her doctor, that medical restriction merely defines the scope of her disability.   When Plaintiff employed the accommodations described above, by asking fellow employees for help, using a ladder, etc., she *was* able to perform these job functions, even to the extent listed in King Soopers' job description for an APC.   The fact that she could perform these functions with accommodations is evidenced by the fact that she worked as an APC for several years following her injury without any negative performance reviews and one of her colleagues even acknowledged that she could do "everything that she has always done . . . ." (ECF No. 75-3 at 43, Feb. 22, 2012 Email.)

King Soopers' assertion that Plaintiff never asked for an accommodation is irrelevant, as King Soopers own documentation shows that Plaintiff was asked what accommodations she required to perform her job and Plaintiff was provided with those accommodations for years prior to her demotion.   First, in the Assessment Interviewer Worksheet created by both Plaintiff and Ms. Bouknight at the August, 2011 meeting between them, the question is specifically listed of

14

whether Plaintiff was "working with any accomodations [sic] on duties or responsibilities?"
(ECF No. 69-13 at 1.)   The Assessment Interviewer Worksheet further asks whether there are
"any accomodations [sic] that you are aware of that will allow you to continue in your present job"
and provided Plaintiff with space to list any "employee suggested accommodations . . . ."   (*Id.* at
4.)   Plaintiff listed all the accommodations discussed above in this Worksheet.   (*Id.*)   Second, in
an internal email among King Soopers employees, it is acknowledged that King Soopers was "able
to accommodate the more severe restrictions" that Plaintiff had with her original MMI of thirty
pounds max lifting, five pounds overhead, and that her updated restriction of forty pounds max
lifting, five pounds overhead could likely "be accommodated as well."   (ECF No. 75-3 at 40, Feb.
15, 2012 Email.)

Under the ADA, an employer must provide its employee with a reasonable accommodation
if that employee can perform the essential functions of her job with that accommodation.
*Davidson*, 337 F.3d at 1190.   Plaintiff completed the Interview Assessment Worksheet in her
August, 2009 meeting with a King Soopers representative and listed all the accommodations that
King Soopers now argues were never requested.   However, King Soopers' own documents
contradict their position – King Soopers clearly had knowledge of the accommodations Plaintiff
needed to perform the essential functions of her job yet demoted her to the service desk in spite of
this knowledge.   The Court finds that Plaintiff has established a material issue of fact as to
whether she could perform the essential functions of the APC position.

3.   A material issue of fact exists as to whether Plaintiff was demoted based on

her disability.

The third element of the prima facie ADA claim requires that Plaintiff "present some

affirmative evidence that disability was a determining factor" in King Soopers' decision to

terminate her employment.   *Selenke*, 248 F.3d at 1259.   Plaintiff's burden in this regard is "'not

onerous,' but it is also 'not empty or perfunctory.'"   *Id.* (quoting *Morgan*, 108 F.3d at 1323).

King Soopers argues that Plaintiff cannot establish a material issue of fact as to the third

factor of a prima facie ADA claim because Plaintiff has not presented any evidence showing that

her disability was a determining factor in her demotion.[3]   However, King Soopers' own briefing

in support of this motion is sufficient to establish a material issue of fact on this issue.   In its

motion for summary judgment, King Soopers argues that it had a legitimate, nondiscriminatory

reason for demoting her: that "restrictions placed on [Plaintiff] by her doctors" rendered her unable

to perform the tasks of an APC.   (ECF No. 69 at 14.)[4]   King Soopers' argument that this

"legitimate business judgment" was not pretextual is not disputed – instead this was direct, overt

discrimination against Plaintiff based on her disability.   (*Id.*)   It is a tautology to say that

Defendant did not take its employment action against Plaintiff based on her disability, but instead

---

[3] King Soopers also argues that Plaintiff cannot identify any other non-disabled employee who was treated more favorably than her.   While it is true that "[a] satisfactory showing that similarly situated employees, who do not belong to the protected class, were treated differently" could "len[d] support" to an ADA claim, *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997), it is not the exclusive method of establishing a plaintiff's case.
[4] King Soopers presents this argument in response to Plaintiff's age discrimination claim, which was voluntarily dismissed by Plaintiff subsequent to King Sooper filing its motion for summary judgment.   (ECF No. 77.)   However, the factor discussed in that argument—whether the proffered reason for its employment action was mere pretext—is substantively no different from the corresponding element of an ADA claim.   In fact, King Soopers cites to this section of their brief when discussing this aspect of Plaintiff's ADA claim, thereby incorporated it by reference into that argument.

demoted her because her disability prevented her from performing the functions of an APC.   The

Court finds that Plaintiff has established a material issue of fact as to this aspect of her ADA claim

and thus has established a prima facie case.

As described above, once Plaintiff has established a prima facie claim, the burden then

shifts to King Soopers to offer a nondiscriminatory reason for taking the employment action it did.

If King Soopers sustains this burden, it then shifts back to Plaintiff to show that King Soopers

proffered reason was merely pretextual.   *Hardy*, 185 F.3d at 1079; *Selenke*, 248 F.3d at 1259.

However, as described above, King Soopers' preferred reason for demoting Plaintff—that her

disability prevented her from performing the job functions of an APC—is also discriminatory.

Because King Soopers has not offered a nondiscriminatory reason for demoting Plaintiff, it does

not sustain its burden and the Court's inquiry ends.   King Soopers' motion for summary judgment

is denied as to Plaintiff's ADA claim.

## B.      Plaintiff's Promissory Estoppel Claim

Colorado law dictates that an employee hired for an indefinite period of time is an "at will"

employee "whose employment may be terminated by either party without cause and without

notice, and whose termination does not give rise to a cause of action."   *Continental Air Lines, Inc.*

*v. Keenan*, 731 P.2d 708, 711 (Colo. 1987).   Thus, an employee is presumed to have been hired on

an at-will basis absent an express contract for a definite period of time.   *Id.* at 711.   "However,

under certain circumstances, this 'at will' presumption is rebuttable, including via a theory of

promissory estoppel."   *Price v. Pub. Serv. Co. of Colo.*, 1 F.Supp.2d 1216, 1224 (D. Colo. 1998);

*Keenan*, 731 P.2d at 711.

17

Under Colorado law, "[t]he elements of a promissory estoppel claim are (1) the promisor made a promise to the promisee; (2) the promisor should have reasonably expected that the promise would induce action or forbearance by the promisee; (3) the promisee reasonably relied on the promise to his or her detriment; and (4) the promise must be enforced to prevent injustice." *Cherokee Metro. Dist. v. Simpson*, 148 P.3d 142, 151 (Colo. 2006) (En Banc); *see also Keenan*, 731 P.2d at 712; *Price*, 1 F.Supp.2d at 1224.   In the context of this case, Plaintiff must demonstrate that: (1) King Soopers made an oral representation to Plaintiff that constitutes a promise; (2) King Soopers reasonably should have expected that the promise would induce action or forbearance by Plaintiff; (3) Plaintiff reasonably relied upon these statements to her detriment through some action or forbearance of action; and (4) the promise must be enforced to prevent injustice.

Plaintiff claims that both her promissory estoppel claim and her breach of implied contract claim are based upon "her tenure with the company, her exemplary performance, as well as assurances she received from management employed by" King Soopers although she does not point to any specific "assurances" that were made to her.   (ECF No. 75 at 19.)   King Soopers points to two alleged promises that were purportedly made to Plaintiff: (1) the alleged promise that she could work at King Soopers until she was ready to retire, (ECF No. 69-1, Barden Dep. at 318:18 – 319:7); and (2) the promise Ms. Bouknight allegedly made to Plaintiff during their August, 2011 meeting that Plaintiff could "stay in grocery" if she could lift 40 pounds to her waist and five pounds overhead.   (*Id.* at 319:15 – 320:9.)   King Soopers argues that Plaintiff cannot establish a material issue of fact as to any element of a promissory estoppel claim as to either of

these alleged promises.   In response, Plaintiff lists three reasons in support of her promissory estoppel claim: (1) that unspecified "representations made by management" over the course of her employment created an enforceable promise; (2) that there were no at-will disclaimers given to Plaintiff at the time she was hired, nor were the ramifications of the disclaimers explained to her when she eventually received them; and (3) because Plaintiff disputes the job requirements of the APC position, certain "statements made by Ms. Bouknight are sufficiently definite to create a triable issue of fact."   (ECF No. 75 at 19 – 20.)

As to the first alleged promise, Plaintiff admitted in her deposition testimony that a promise that she could work until she was ready to retire was not a legal promise that could be breached. (*Id.* at 318:25 – 319:7.)   Plaintiff further acknowledged her understanding that she was never promised that she would have a job forever, that "[t]hey don't ever promise you that" and her belief that employees such as herself were dispensable.   (*Id.* at 316:6 – 11.)   Thus, Plaintiff cannot establish the third element of a promissory estoppel claim as to this alleged promise, as she could not possibly have relied upon a promise that she never believed was a legally binding one.

As to the second promise allegedly made by Ms. Booknight that Plaintiff could "stay in grocery" if she could lift forty pounds, even assuming arguendo that Plaintiff could establish a material issue of fact as to whether the promise was made and whether King Soopers reasonably should have believed that Plaintiff would rely on it, Plaintiff has not presented any evidence indicating that she took any action, or forbearance of action, in reliance on that alleged promise. Plaintiff's argument that because she disputes the requirements of an APC, Ms. Bouknights' statements would create a triable issue of fact is unavailing.   (ECF No. 75 at 20.)   The fact that

Plaintiff disputes the requirements of the APC position does nothing to show that Plaintiff took any action, or refrained from taking some action, in reliance on Ms. Bouknight's alleged promise. Thus, Plaintiff's promisorry estoppel claim fails as a matter of law and is dismissed.

### C.    Plaintiff's Implied Contract Claim

Plaintiff's implied contract claim is unclear as none of Plaintiff's briefs or pleadings point to a specific promise or employment agreement, either oral or written, that Plaintiff alleges to have created an implied contractual obligation.   Instead, Plaintiff asserts in her response brief that both her implied contract and promissory estoppel claim are based upon "her tenure with the company, her exemplary performance, as well as assurances she received from management," although she does not specifically identify any such "assurances."   (ECF No. 75 at 19.)

Under Colorado law, "[a]n employer can be liable for the discharge of an at-will employee . . . where an implied contract arises out of company policy and employment manuals or where an employee relies on the policies and manuals to his detriment."   *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994) (citing *Keenan*, 731 P.2d at 711).   Plaintiff's implied contract claim, as articulated in her Complaint and further discussed in her response to King Soopers' summary judgment motion, makes no mention of any policies or employee manuals that were given to her which she believed created a contract, express or implied, between her and King Soopers.

In support of her promissory estoppel claim, Plaintiff argues that she was not given any at-will disclaimers at the time she was hired, nor were they explained to her when she eventually received them.   (ECF No. 75 at 19; ECF No 75-2, Barden Aff. at ¶ 2.)   Even if Plaintiff made this

argument in support of her implied contract claim, it would still fail because, under Colorado law, there is a rebuttable presumption that an employee is at-will absent an express contract stating otherwise.   *Keenan*, 731 P.2d at 711.   In other words, Plaintiff would have to affirmatively show that some sort of employment policy or manual *existed and was given* to her when she began her employment that did not contain the disclaimer, as opposed to arguing that she never received one. The absence of a disclaimer stating that an employee's employment is at-will cannot overcome the at-will employment presumption.   Plaintiff's argument that the significance of the at-will disclaimer was never explained to her is belied by her testimony that she read and understood that language and signed a release acknowledging the same.   (ECF No. 69-1, Barden Dep. at 270:18 – 272:3; *see also* ECF No. 69-4, King Soopers Policies and Special Procedures; ECF No. 69-5, Policies and Special Procedures Receipt Acknowledgment.)

As demonstrated by Plaintiff's own testimony and the exhibits submitted by King Soopers in support of its motion for summary judgment, King Soopers' employee policies contained clear and explicit language indicating that its provisions were "not intended to create or constitute an employment agreement with any associate," and that Plaintiff received and understood this disclaimer.   (*Id.*)   While the existence of an implied contract is generally a fact question, the issue may be decided as a matter of law where, as here, "the employer's document contains a disclaimer stating that the policies are not intended to create a contract . . . ."   *Dodson v. Bd. of Cnty. Comm'rs*, 878 F.Supp.2d 1227, 1245 (D. Colo. 2012) (citations omitted).   Because Plaintiff has not presented any evidence tending to show that any King Soopers policy or manual could have created an implied contract between Plaintiff and King Soopers, and because of the express

language in the King Soopers employee policies indicating the exact opposite, her claim for breach of an implied contract fails as a matter of law and is dismissed.[5]

## IV.    CONCLUSION

Based on the foregoing, it is ORDERED that King Soopers' Motion for Summary Judgment (ECF No. 69) is GRANTED, in part, and DENIED in part, to wit:

1.   Plaintiff's claim for promissory estoppel is DISMISSED;

2.   Plaintiff's claim for implied contract is DISMISSED.

Plaintiff's claim for recovery under the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq*. remains before the Court.   Because King Soopers did not move for summary judgment on Plaintiff's claim under the Colorado Unfair Employment Practices Act, C.R.S. §§ 24-34-401 *et seq.*, that claim remains before the Court as well.

DATED this 29th day of July, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

---

[5] In its reply brief, (ECF No. 80), King Soopers appears to move this Court to strike Plaintiff's affidavit.   (ECF No. 75-2.)   King Soopers' request is not in the correct procedural posture, and is therefore denied.   D.C. Colo. L. Civ. R. 7.1(d) ("A motion shall not be included in a response or reply to the original motion.   A motion shall be made in a separate document.").